UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIFFANI RINZEL,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | No. 1:22-cv-00143-DJC-GSA<br><br>**FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, TO REMAND FOR FURTHER PROCEEDINGS, AND TO DIRECT ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY**<br><br>**(Doc. 20, 21)** |

### I.    Introduction

Plaintiff Tiffani Rinzel seeks judicial review of a final decision of the Commissioner of Social Security denying her application for supplemental security income pursuant to Title XVI of the Social Security Act.[1]

### II.    Factual and Procedural Background

On January 22, 2020, Plaintiff applied for supplemental security income alleging a disability onset date of December 1, 2016, due to Ehlers-Danlos syndrome, bipolar disorder, and post-traumatic stress disorder (PTSD). AR 68, 206, 231. The Commissioner denied the application initially on April 7, 2020, and on reconsideration on October 26, 2020. AR 69–81; 83–99. Plaintiff appeared for a hearing before an ALJ on June 10, 2021. AR 44–67. The ALJ issued an unfavorable decision dated June 22, 2021. AR 16–38. The Appeals Council denied review on December 2,

---

[1] The parties did not consent to the jurisdiction of a United States Magistrate Judge. Doc. 8, 10.

2021, and this appeal followed.  AR 5–10.

### III. The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits.  "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted).  If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §§ 416.920(a)-

2

(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: 1- whether a claimant engaged in substantial gainful activity during the period of alleged disability, 2- whether the claimant had medically determinable "severe impairments," 3- whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, 4- whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and 5- whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. See, 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.     The ALJ's Decision**

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of January 22, 2020. AR 22. At step two the ALJ found that Plaintiff had the following severe impairments: right ankle fracture status post-open reduction internal fixation with residual pain; Ehlers-Danlos syndrome; varicose veins in the bilateral lower extremities; bilateral carpal tunnel syndrome; obesity; bipolar disorder; borderline personality disorder; and posttraumatic stress disorder (PTSD). AR 22. The ALJ found that the following impairments were not severe: Crohn's disease; urinary incontinence, cystocele, and rectocele; and asthma. AR 22–23. Finally, at step two the ALJ found that despite Plaintiff's complaints concerning same, there was no evidence to support medically determinable impairments of: neuropathy; tremors; or hearing problems. AR 22–23.

At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 23–25.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform sedentary work as defined in 20 CFR 416.967(a)

with the following limitations: must use a cane to ambulate; can frequently reach, handle, finger, feel, push, and pull with bilateral hands; cannot operate foot controls with the right foot; can occasionally perform postural activities; can never climb ladders, ropes, or scaffolds; cannot be exposed to unprotected heights; can occasionally be exposed to moving mechanical parts or vibrations; is limited to understanding, remembering, and carrying out short simple instructions required to perform routine repetitive tasks-- and can maintain sufficient attention, concentration, persistence and pace to perform such tasks.  AR 26–31.

At step four, the ALJ concluded that Plaintiff did not have past relevant work.  AR 31.  At step five, in reliance on the VE's testimony, the ALJ found that Plaintiff could perform other jobs existing in significant numbers in the national economy at the light exertional level, namely: addresser, order clerk and final assembler.  AR 31–32.  Thus, the ALJ concluded that Plaintiff was not disabled since the application date of January 22, 2020.  AR 32.

### V. Issues Presented

Plaintiff asserts three claims of error: **1-** The ALJ failed to offer clear and convincing reasons supported by substantial evidence for rejecting the Plaintiff's subjective complaints; **2-** The ALJ erred in finding that Plaintiff's urinary incontinence was a non-severe impairment at Step Two resulting in an RFC which fails to include limitations related to that impairment; and **3-** The ALJ erred in relying on vocational testimony to meet its burden at Step 5 without inquiring about and resolving conflicts in the VE's testimony.

#### A. Subjective Complaints

##### 1. Legal Standard

Before proceeding to steps four and five, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling

("SSR") 96–8p.

In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857

(9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

As the Ninth Circuit recently clarified in *Ferguson*, Although an ALJ may use "*inconsistent objective medical evidence in the record to discount subjective symptom testimony*," the ALJ "cannot effectively render a claimant's subjective symptom testimony superfluous by demanding positive objective medical evidence fully corroborating every allegation within the subjective testimony." *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (emphasis in original).

In addition to the objective evidence, the other factors considered are: 1- daily activities; 2- the location, duration, frequency, and intensity of pain or other symptoms; 3- precipitating and aggravating factors; 4- the type, dosage, effectiveness, and side effects of any medication; 5- treatment other than medication; 6- other measures the claimant uses to relieve pain or other symptom;  and 7- Other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. See, 20 C.F.R. § 416.929(c)(3).

### 2. **Analysis**

The ALJ summarized Plaintiff's testimony as follows:

> The claimant is a 40-year-old woman who lives with her adult son, her mother, and her mother's boyfriend. She testified that she cannot maintain fulltime employment because she has EhlersDanlos syndrome. This condition causes her joints to dislocate, and makes her fall frequently. She fractured her ankle in the past because of this, and now she must use a cane to walk outside the house. In addition, she has carpal tunnel syndrome, which causes numbness in her hands and makes it hard for her to write, fasten buttons, and hold objects. Finally, she has anxiety and depression, and she was hospitalized several times in the past for these problems. She is able to prepare simple meals and drive, and although she can shower, she finds that activity exhausting. She relies on her mother to do the housework, and she spends 50 to 75 percent of her day lying down. She estimates that she can stand for 15 minutes before she must change positions, can sit for up to three hours. She can lift up to 40 pounds, but she can carry just 25 pounds without her cane, and 15 pounds with it. Elsewhere, the claimant added that she has trouble getting along with others, can pay attention for just 20 minutes at a time, and has trouble following instructions. She does not deal well with stress or changes in her routine. She helps clean up after her pets, goes shopping, does the laundry, and manages her own funds. She gardens if she can sit down to do so. She spends time talking to her friends, and she enjoys reading, writing, and sewing [Exs. 4E; 8E].

AR 26.

The ALJ then summarized the related medical evidence and reasoning for discounting Plaintiff's subjective complaints:

> The claimant has Ehlers-Danlos syndrome, and in March 2019, she fell and fractured her right ankle and underwent an open reduction internal fixation of that fracture [See e.g. Ex. 6F at 49]. Despite this procedure, and ongoing treatment, she has continued to complain of pain in her ankle. Further, examinations reveal tenderness and sensory deficits over her right foot and ankle, and providers note that she walks with a cane [Exs. 7F at 47-51; 12F at 8-12; 13F at 77-83; 18F at 3-4; 25F at 2-8]. Additionally, she describes persistent falling and joint pain because of her Ehlers-Danlos syndrome. While she has required little treatment for this, examinations have shown left shoulder tenderness following a fall [Exs. 11F at 45-48; 19F at 8-12]. The pain and other symptoms associated with the claimant's Ehlers-Danlos syndrome and history of right ankle fracture limit her to work at the sedentary exertional level, cause her to need to use a cane, and further affect her abilities to operate foot controls, perform postural tasks, reach, and interact with certain environmental conditions.
>
> In April 2019, the claimant underwent electrodiagnostic testing, and this revealed bilateral carpal tunnel syndrome [Ex. 26F at 24-28]. She has not sought treatment for this problem since the date she alleges she became disabled, and she has not demonstrated abnormalities in her hands or wrists on examination.[2] Nevertheless, given the persistent nature of this impairment, it is sensible that it limits her capacity to perform manipulative tasks.
>
> . . .
>
> The claimant has stated that her physical impairments prevent her from working because she cannot stand or walk for very long before she must rest, she has trouble using her hands, she must spend most of her day lying down, and she struggles to complete even routine daily tasks independently. The objective evidence, however, does not fully support these statements. Physical examinations of the claimant do *reveal tenderness and sensory deficits over the right foot and ankle and tender* varicosities in the bilateral lower extremities, and providers note that the claimant walks with a cane. On a few occasions following a fall, she also displayed tenderness over the left shoulder. *Other than this, evaluations are unremarkable*, with clinicians failing to indicate that she appears uncomfortable *or demonstrated diminished strength* or manual dexterity during appointments [Exs. 5F-7F; 11F-13F; 18F; 19F; 25F-27F].
>
> . . .
>
> She has stated that she cannot stand or walk for very long without a break, and

---

[2] Plaintiff does not dispute either of these findings concerning carpal tunnel syndrome.

7

> providers do note that she uses a cane during appointments. Nonetheless, they have not indicated that she appears uncomfortable standing during appointments [Hearing Testimony; Exs. 4E; 8E; 5F-7F; 11F-13F; 18F; 19F; 25F-27F]. Together, this implies that while she is more limited in standing and walking than Dr. Kiger and Dr. Linder find her to be, she should be able to perform these activities for two hours in an eight-hour day, provided she can use a cane to ambulate.

AR 27–28 (emphasis added).

Plaintiff contends that the citations in the final two quoted paragraphs are too general to facilitate meaningful judicial review in that they cover hundreds of pages with no indication as to which purportedly unremarkable examinations the ALJ was referencing. MSJ at 15–16. Defendant in response emphasizes that the ALJ provided ample specific citations in the preceding paragraphs. Resp. at 4–5, Doc. 21.

Unfortunately, the ALJ's discussion here was not clear and convincing. The ALJ acknowledged that Plaintiff had residual tenderness and sensory loss in her ankle after her surgery, but as quoted and italicized above, the ALJ discounted the importance of those residual symptoms by stating "other than this, evaluations are unremarkable . . ." Even if the examinations were unremarkable except for residual tenderness and sensory loss, those symptoms are still notable. Importantly, the ALJ was not accurate when stating that the evaluations were otherwise unremarkable. To the contrary, the ALJ overlooked a number of important findings from the post-surgical examination records beyond merely residual tenderness and sensory loss. These included: **1-** an August 14, 2019 exam noting she was progressing poorly post-operatively, documenting "extremely tender" to light touch, 3/5 strength[3] in plantarflexion, dorsiflexion, inversion and eversion with significant pain (AR 513).; **2-** an April 1, 2020 Emergency Department visit after another fall documenting swelling and limited ROM (AR 1372, 1384); **3-** a September 18, 2020 podiatry visit documenting mild edema, painful ROM, and recommending another MRI to rule out

---

[3] Which contradicts the ALJ's assertion concerning "clinicians failing to indicate that she appears uncomfortable *or demonstrated diminished strength* or manual dexterity during appointments." AR 28 (emphasis added).

additional pathology (AR 1295–96); and **4-** a November 3, 2020 physical therapy discharge evaluation documenting palpable swelling, 4/5 strength in plantarflexion and dorsiflexion, and that she failed to meet her treatment goals of: reduced pain, walking 300 feet without an assistive device, and tolerating full weight bearing on the right ankle. AR 1548.

Further, the ALJ's finding as to conservative treatment is belied by the fact that Plaintiff underwent ankle surgery and suffered residual pain, pain which one provider suggested was consistent with complex regional pain syndrome. AR 514. Additionally, the absence of any recommendation for further surgical intervention does not undermine the existence of a disabling level of pain, weakness and range of motion limitations of a surgically repaired ankle joint in an individual with obesity, chronic joint instability due to Ehlers-Danlos, and who suffers recurrent falls.

Thus, remand is appropriate for the ALJ to reassess the evidence concerning Plaintiff's ability to meet the standing and walking demands[4] of sedentary work.

### B.    Urinary Impairments Found Non-Severe

#### 1.    Applicable Law

At step two, the ALJ must determine if the claimant has a medically severe impairment or combination thereof. "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a) & 416.921(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," and those abilities and aptitudes include: 1- physical functions such as walking, standing, sitting, lifting, and carrying; 2- capacities for seeing, hearing, and speaking; 3-

---

[4] As to other potential limitations such as manipulative activities (secondary to carpal tunnel), or extended sitting, Plaintiff does not sufficiently put those matters in issue. Nor does Plaintiff directly dispute the ALJ's finding that Plaintiff did not pursue treatment for carpal tunnel (AR 27), or that she did not allege substantial difficulty with sitting (AR 29). Further, Plaintiff's argument does not discuss her allegations related to her mental health conditions such as bipolar, borderline personality disorder and PTSD.

understanding, carrying out, and remembering simple instructions; 4- use of judgment; 5- responding appropriately to supervision, co-workers, and usual work situations; and 6- dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) & 416.921(b).

Despite the meaning of the word "severe" in common parlance, the step-two severity threshold is not high. "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." Smolen, 80 F.3d at 1290. "Step two, then, is a de minimis screening device [used] to dispose of groundless claims[.]" Smolen, 80 F.3d at 1290.

### 2. **Analysis**

Plaintiff contends the ALJ erred in finding urinary incontinence non-severe. Defendant contends that any such error was harmless because the analysis proceeded past step two given other severe impairments, and that at the RFC stage all impairments are considered whether severe or not. Defendant's contention is not compelling. However, even though the analysis did proceed past the second step, and that the RFC <u>should</u> account for all impairments whether severe or not, does not mean that the RFC did in fact account for urinary incontinence--such as by specifying the number of bathroom breaks needed in addition to, or accommodated by, normal breaks, any need for proximity to a bathroom, and then ultimately inquiring of the Vocational Expert whether such limitations would be work-preclusive.

Additionally, the ALJ's factual observations in support of the non-severity finding were not entirely accurate or complete.

The ALJ explained as follows:

> The claimant also alleges urinary incontinence, Crohn's disease, neuropathy, a chronic tremor, and hearing problems. She has long complained of urinary difficulties, and an examination performed in March 2020 revealed a rectocele and a cystocele. A cystoscopy conducted that same month showed trebeculation through the bladder walls, and some bladder leaking, consistent with interstitial cystitis [Ex. 6F at 6-28]. She has not received treatment specifically for interstitial cystitis since

> that time, and providers have not formally diagnosed her with this condition. However, she does complain of intermittent symptoms, such as abdominal pain and nocturnal enuresis, and she sometimes displays tenderness in the suprapubic area. Otherwise, evaluations are unremarkable, and the claimant has not undergone additional diagnostic workup to address her incontinence or other symptoms [Exs. 13F at 40-49, 54-60; 24F at 1-4; 25F at 39- 44]. The evidence as a whole does not show that the claimant's urinary incontinence, cystocele, or rectocele, considered both singly and in combination, more than minimally affect her ability to perform work activities; thus, the undersigned must find that these impairments are not severe.

AR 22.

For example, contrary to the ALJ's assertion that Plaintiff was not specifically treated for or diagnosed with interstitial cystitis after March 2020, an emergency department note dated August 7, 2020, reflects a diagnosis for "chronic cystitis" which is synonymous. *See* AR 1362. Similarly, a January 19, 2021, urology consultation reflects chronic cystitis under assessment/plan—granted this was perhaps by way of history and not based on a review of diagnostics.  AR 1776.

In another example, Defendant emphasizes that during a medical visit dated December 2019, "Plaintiff stated that medication (Detrol) made it such that '[s]he has no urge to go to the restroom during the day' (AR 494)" which, according to Defendant, "supports the ALJ's recognition that her ongoing symptoms were at night (AR 22)."  However, the ALJ did not state in so many words that Plaintiff's ongoing symptoms were limited to the nighttime. Rather the ALJ simply stated that Plaintiff complained of intermittent symptoms "such as abdominal pain and nocturnal enuresis."  AR 22.  Additionally, the ALJ did not cite or describe the treatment note Defendant quotes from.

 In contrast to the December 2019 treatment note indicating no urinary urgency during the day, Plaintiff cites to a March 5, 2020, treatment note which reflects "2 years of urge incontinence since her hysterectomy. PT reports she feels like her incontinence is getting worse, especially her nocturia. *Goes to bathroom during day, several times per hour*. No stress incontinence sx." AR 488 (emphasis added).  Importantly, the ALJ did not attempt to reconcile these differences.

In yet another example, Defendant emphasizes a March 2020 medical visit during which "Plaintiff stated that her symptoms of pain with a full bladder had resolved, which supported the ALJ's finding that some symptoms were intermittent (AR 470)." Resp, at 8.  However, the cited record actually states as follows:

> Patient states that for 2-3 days after surgery she was having severe pain when her bladder was full that would resolve with void but does states that this has now resolved . . .  The patient continues to complain mostly of urge incontinence. She states she will get an urge and immediately need to use the bathroom. Urge will come on all at a once. Denies dysuria or hematuria although she states her urethra has been uncomfortable since her surgery.

AR 470 (emphasis added)

The most natural reading of this progress note is that Plaintiff was experiencing a particularly severe bout of pain with a full bladder during the 2-3 days following her surgery, that the severe pain resolved but she continued to complain of urge incontinence.  This does not suggest that her symptoms either fully or mostly resolved.

In sum, the ALJ's reasoning in support of the non-severity finding was unclear and Defendant's effort to suggest otherwise is not persuasive.  Therefore, the ALJ's conclusion that Plaintiff's urinary incontinence would cause no more than minimal impact on Plaintiff's ability to perform basic work activities is deficient.

### C.     VE Testimony; Step Five Jobs

Next, Plaintiff takes issue with all three of jobs identified by the VE at step five, and the ALJ's reliance on same.  As to order clerk, Plaintiff contends it has a reasoning level of R3 according to the Dictionary of Occupational Titles (DOT), and that jobs with a reasoning level of R3 are incompatible with a limitation to simple and routine tasks. MSJ at 20–21 (citing *Michelle G. v. Berryhill,* 2019 WL 3322405, at *10 (S.D. Cal. 2019), citing DOT, App. C, 1991 WL 688702; *Zavalin*, 778 F.3d at 847 (noting that the claimant's "limitation to simple, routine tasks is at odds with Level 3's requirements.)).  Defendant does not contend otherwise.

12

As to the job of addresser, Plaintiff argues that it is obsolete as recognized by the court in *Skinner v. Berryhill*, 2018 WL 1631275, *6 (C.D. Cal. April 2, 2018). Again, Defendant does not contend otherwise.

Finally, as to the job of final assembler, Plaintiff contends that "common sense casts doubt on the reliability and validity of the VE's testimony that there are 70,000 final assembler jobs in the national economy," which was similarly questioned by the court in *Quesada,* and remanded on that basis, where the VE testified there were 23,000 such jobs. MSJ at 22–23 (citing *Quesada v. Berryhill*, 2017 WL 3457292, *5-6 (S.D. Cal. Aug. 11, 2017)). Defendant contends that this issue was waived as Plaintiff did not raise this issue before the ALJ or Appeals Council, as the Ninth Circuit recognized in *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) ("We now hold that when a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel."). Plaintiff did not file a reply attempting to distinguish *Shaibi*, or otherwise contest Defendant's assertion that Plaintiff waived the issue by failing to raise it before the ALJ or Appeals Council. The issue therefore is waived.

### VI.     Findings

Substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled. Remand is appropriate for the ALJ to conduct a new hearing and issue a new decision. Specifically, the ALJ should reconsider Plaintiff's statements made to her clinicians, statements made in function reports, and statements made at the hearings concerning her standing and walking tolerances, the objective evidence concerning same and then reach a reasoned conclusion whether Plaintiff can meet the standing and walking demands of sedentary work (2 hours). The ALJ should further reconsider the evidence concerning Plaintiff's urinary incontinence, interstitial cystitis, and any work-related limitations it imposes such as the need for

daytime bathroom breaks and proximity to a restroom.

Finally, Plaintiff does not provide an argument in support of the contention that an award of benefits is appropriate, nor address the conditions under which such an award is to be made. As such there is no basis to find those conditions are met here. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (A court may remand for an immediate award of benefits if: 1- the ALJ failed to provide legally sufficient reasons for rejecting evidence; 2- there are no outstanding issues that must be resolved before a determination of disability can be made; and 3- it is clear from the record that the ALJ would be required to find claimant disabled is such evidence is credited); *Treichler*, 775 F.3d at 1099 (when a court does not affirm the agency's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

**VII.    Recommendations**

For the reasons stated above, the recommendation is as follows:

1. That Plaintiff's motion for summary judgment (Doc. 20) be **GRANTED.**
2. That Defendant's cross-motion (Doc. 21) be **DENIED.**
3. That the matter be remanded to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the Findings and Recommendations.
4. That the Court Clerk of Court be directed to enter judgment in favor of Plaintiff Tiffani Rinzel and against Defendant Commissioner of Social Security.

**VIII.    Objections Due Within 14 Days**

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's

Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **September 11, 2024**                    **/s/ Gary S. Austin**
                                                                 UNITED STATES MAGISTRATE JUDGE